You're first from Mr. Vissiteri, if we have you ready. Good morning, Your Honors, may it please the Court, my name is Sal Vissiteri along with my co-counsel, Elizabeth McIntosh, who represent the appellant, Wreck Marine Logistics. With the permission of the Court, we'd like to reserve five minutes for rebuttal. I see the clock is showing that. Wreck Marine respectfully requests this Court to reverse the District Court's motion for summary judgment rulings and render judgment in favor of Wreck Marine, finding Wreck Marine to be the invitee of Bisso Marine and therefore due indemnity from the Appellee Don Services. For the Court to reverse and render judgment in favor of Wreck Marine, it need only find in reviewing the District Court's motion for summary judgments de novo that Wreck Marine was Bisso's invitee as a matter of law under this Court's prior judgments as well as the General Maritime Contract law that has developed since this Court's decisions. Now, when you refer to the General Maritime Contract law that has developed about whether Wreck could be an, are you referring to whether Wreck could be an invitee? I'm referring to whether Wreck could be an invitee and whether Wreck was on premises. I'm specifically referring to two District Court opinions that have very little analysis about this question. I'm actually referring to four District Court decisions as well as this Court's decision in the Grogan case. So, Raynaud, Clayton-Williams, Alex, the N. Ray, Larry Dorwan case and the Grogan case. Tell me how Grogan says you can have this claim for being an invitee. Well, there are four ways I can say that, Your Honor, because Grogan was not at all troubled by the fact that the only term used in its contract was invitee and it applied it to a contractor just like Wreck Marine. It didn't, the law had developed so much that it didn't need the word subcontractor or contractor as the appellee argues should be there in the District Court. In the Grogan opinion, didn't they stipulate that it was an invitee? Eventually they did, but not in the lower court. When it came to this Court, they did. Actually, I think that was N. Ray Dorwan, Your Honor. I don't think they stipulated in Grogan. No, I think it was, I think that was Dorwan that was the stipulation. In Grogan, the District Court and this Court found that invitee was broad enough based on the prior decisions to include subcontractors and contractors, and there's a long line of cases to do that. All right. Was it, was it, was Grogan similar to this where you're in a body of water and you're claiming to be an invitee? It was, Your Honor. All of these cases involve merit. Tell me the factual scenario in Grogan. So Grogan was on an offshore, let me get to my notes on that, Your Honor, so I don't misquote that. Grogan was working for a company, W&T, and it was on... Just tell me, was Grogan on water or was Grogan on the platform? I believe when Grogan fell, he was doing a personnel basket transfer between the platform and the vessel, just like Mr. Knox was doing here, which is very common for the offshore industry for people to move between areas, and therefore, why I believe the courts have defined the worksite as to be broader than just a vessel or a platform. All right, now, in your claim that this is a premises for the, I'm sure there's all sorts of regulatory matters for granting the right to be out there in the Gulf laying pipe or whatever, what sort of federal or state, by the way, how far offshore was this incident? This was in Block 187, so... That means nothing to me. Well over three miles. It was on the other continental shelf, Your Honor, it was in federal waters. And so, is there some permit or something saying BISO has the right to work from latitude X to latitude Y and longitude A to longitude B? Is there some sort of permit saying that? There certainly is, Your Honor. At the time we submitted the motion for summary judgments, that was not part of the record, but it was clear from the work records that we did submit that BISO was laying pipeline in the Eugene Island when... I understand that. It was laying pipe, but there's nothing in the summary judgment record saying that BISO was allowed to work in this specific area. No, Your Honor, but I think it's clear that it was doing that and was... Well, there's no question it was doing that. I can go out and speed my automobile, that doesn't mean I can do it, other than the fact I do it, but I'm not entitled to do it. So I just want to make sure there's nothing in this summary judgment record that in any way designates a certain part of the Gulf of Mexico as, in effect, belonging to BISO while it's laying pipe. There is not that evidence at the time, which, Your Honor, is one of the reasons we believe was inappropriate for the district court to have grant Don's motion for summary... Well, did you move under Rule 56 to continue the summary judgment decision until you could supplement the record? No, Your Honor, we took this appeal because we believe the evidence is adequate to show that BISO did have control over the area where the misdemeanor was, and on those... My question to you is, you didn't ask the district court to delay ruling on summary judgment until you could provide further evidence under Rule 56, I believe it's F. We did not, Your Honor. We did not seek reconsideration because we believe the evidence is sufficient. I agree with you. That's not reconsideration, that's asking the court to delay ruling on the summary judgment motion until you provide further evidence. You didn't request that? We didn't, nor did the district court ask for further evidence or deny the motions for summary judgment. When does the district court have to ask for further evidence on summary judgment? Well, I certainly think the district court could have just found there were issues of fact or more discovery needed to be done, which is why we think the court erred in granting Don's motion for summary judgment. If there was an issue about control, the court should have allowed the parties to conduct more discovery on that. We don't think there's an issue of control because the BISO barge is swinging a crane and a basket full of personnel over a very limited area of the Gulf of Mexico and setting it onto the back deck of the Miss Jane, which clearly shows under Grogan where this court held that the premises and the occupancy is the same extent of control, the BISO controlled this area of the Gulf of Mexico and controlled the Miss Jane. If it didn't control the Miss Jane in this area of the Gulf of Mexico, it never could have boomed its crane over, placed personnel on the basket of the Miss Jane, and caused this accident allegedly. So if control is truly, and we believe Grogan holds that, extensive with the premises, then this is the premises of BISO. BISO had pipeline in the water, they had divers in the water, they had sled in the water. They were operating in a defined area that they referred to as the Eugene Island 187 area. They invited wreck into this area by summoning the vessel to come alongside the BISO mighty chief and they moved personnel via a BISO crane onto the Miss Jane, which we believe more than is adequate to satisfy the Grogan test for occupancy in their four premises. The other district court cases I referred to, Your Honor, I'd like to go through. In Reno, Judge Clement of this court, when she was still in the district court, addressed these exact same two issues. Who is in a- Is it your position that they're like W&T? In the Grogan case? Yes, ma'am. That BISO is like W&T, they are the top of the pyramid. And you were on that panel, Your Honor. Yes, sir. So you're familiar with how this concept works, that the top of the pyramid is the invitor. And anyone that it invites to do this work, the courts have consistently held to be an invitee. They've given a very broad scope, as Judge Fallon noted in the Alex case, when there's no definition of the term invitee, it's entirely proper to give a broad scope of that definition. And that is what has been applied in the Reno, Alex, Clayton-Williams, Inlay, Larry, Darwan, as well as the Grogan cases. And I can't remember, this is bad, but I should remember this, do we have to decide the dual issue? We do not, Your Honor. We don't have to decide that. That's still a remaining issue hanging out there in the Fifth Circuit, but we don't need to decide it here today. In concept, I think that's correct, Your Honor. There's really no issue as to the fact that BISO was the invitor of REC Marine. The lower court judge noted that there was a chain that it had to get there, but there's no doubt that BISO invited Kilgore, which in turn invited REC, and therefore REC was doing the business of BISO for the mutual benefit, which is the latter part of the test. Thank you. So, you know, one issue I'd like to cover before I go through the four cases is the plethora of decisions in this Court, including the Mills case, the Banks court, and the Blanks case that held that an invitee is a person who goes on a premises with the express or on business of the occupant or for their mutual benefit. As Judge Elrod noted, REC Marine clearly satisfies the express or implied invitation of BISO. It's clearly there for the business of BISO and for the mutual benefit of BISO and REC. One part that I'd like to illustrate to the Court is in looking at the premises, which I believe, Judge Barksdale, you're most concerned about, is Judge Wisdom's opinion in the Banks v. Hyatt case, which admittedly is a Louisiana State Court case, but is the foundation of where the courts look to define premises. And for that, Judge Wisdom looked at the restatement of torts and said, the area of invitation will, of course, vary with the circumstances of the case. It extends to the entrance of the property and to the safe exit after the purpose of the visit is concluded. It extends to all parts of the premises to which the purpose may reasonably be expected to take the invitee. We would argue that for REC Marine, as an operator of a vessel, to come onto BISO's premises, it would reasonably be expected to come alongside the BISO vessel, alongside where a swing rope transfer could take place, alongside where a personnel basket on a crane could be lowered over the back deck of the Miss Jane, which is exactly what's happening here. Contrary to what the appellant argument, the appellee argues, the Miss Jane is never reasonably expected to come aboard the Mighty Chief. That's a collision. That's an elision. Vessels come alongside of one another and, therefore, exchange goods and cargo and personnel. That is, in effect, coming onto the premises that is involved here and is very consistent with the way the courts— What if it had been—what if the Gulf of Mexico had had very steep, dangerous waves? Are you saying that BISO can control that, or are you saying, well, BISO shouldn't have used its crane? Well, Your Honor, I think this Court has said that repeatedly in personnel basket transfers, that it's a dual obligation of the vessel and the platform owner to control whether or not a personnel basket transfer takes place. That's different from controlling whether a personnel basket transfer takes place and whether they control the premises. I don't think it is at all different, Your Honor. If you are controlling the operation, you are controlling the area of the operation, when this case includes the immediate area around the mighty chief to do the personnel basket transfer. So you would control that area in determining whether or not it is safe to do a personnel basket transfer, safe that the distance of the vessels are safely apart from each other and the extent of the crane can safely do that maneuver. And this dovetails very well with Judge Wisdom's and the longstanding body of law that egress and ingress are included in that. I thought the Gulf had been calm when the basket started moving and yet a big wave came along and threw the Mary Jane or whatever the name of the vessel, Miss Jane, up in the air and caused this problem. Is that being controlled by BISO? Well, it certainly is the area of control. I don't think BISO has to control the waves. It just has to control the area. Well, BISO has got to be a guarantor. I don't agree with that, Your Honor. I'm just asking the questions here, Counsel, because you're, at least as far as I see it, you're presenting a very novel argument. With all due respect, I don't think we are, Your Honor. It is consistent with the district court's decisions that define premises and term of the worksite. And that is particularly true in the Clayton Williams case, where the court looked at the and said that was the premises where the injury occurred. Again, in the In re. Larry Dorwan case, the worksite was so apparent to be the premises that it was considered a footnote by Judge Doherty that because Apache had invited Larry Dorwan onto the worksite, the court concluded, of course, clearly, Larry Dorwan was an invitee of Apache. I have two related questions. Is it your position that the MSJ was adjacent to BISO's premises or part of BISO's premises? I don't think the MSJ defined that, but this court has always defined the term arising out of the work very broadly. So adjacent, it doesn't matter what you're saying? Adjacent is a legal term that the appellee relies on that I don't think is applicable here. Alongside would be the better term for me. I think a vessel alongside another vessel is clearly in the area of control. Adjacent and alongside seem similar to a layperson. Well, they may, Your Honor, but the tort cases that the appellee cites seem to rely on adjacency is a negative term, where in the maritime context, as this court stated, the reasonable area that the purpose may reasonably expect to take the invitee, for a has to be that reasonable place. It's also, again, consistent with ingress and egress, which this court held in Banks v. Hyatt is included within the definition of premises. Okay. Then my second question is, is it your position that there's a fact issue on whether the area around the mighty chief is the premises controlled by BISO, or is it your position that we should hold this as a matter of law? I believe we submitted sufficient evidence that as a matter of law, you can hold that the premises BISO controlled included the area around the mighty chief to the extent of the crane boom, at least to put a personnel basket on the back of the machine. I think that is an easy place to reach. If Your Honors don't agree with that, then I think the area of control, the premises, as Judge Barksdale asked about what the federal government defined as the premises and allowed BISO to work in, would be an issue of fact that was not fully developed at the time and would weigh against the district court having granted Don's motion for summary judgment and should require this court to reverse that part of the district court's decision at minimum. Thank you. May it please the court, Your Honors, Alfred Rufty on behalf of the appellee, Don Services, LLC. I think it's important for us to bear in mind what an invitee is and why an invitee is owed duties. Invitee status gives rise to a duty on the part of the occupier of the premises to ensure that the premises are safe for the protection of the invitee. Under the novel theory that Rec advances here, rejected appropriately by Judge Zaney, the premises is the Gulf of Mexico or at least some segment of the Gulf of Mexico. What that would mean is that BISO, as invitor, would have an obligation to ensure that the Gulf of Mexico was safe in order to prevent injury to Rec. This court has never made such a such a finding nor has any other appellate court in the land. Along that line, and I thought your brief handled the Grogan case well, but state again why you feel Grogan is not applicable. Couple of reasons, Your Honor. First, to the extent Grogan is analogous, it would simply stand for the proposition that BISO is the invitor. It would not stand for the proposition that Rec is the invitee. In Grogan, as well as in all of this court's controlling cases, it was an undisputed given that the personal injury plaintiff was the invitee. The question in these cases was always, who is the invitor? Is it the owner of the rig or platform? In Grogan, is it the owner of the Triton Achiever vessel that was there to assist? Who is the invitor who owes the duty to the invitee? So, Grogan is an apposite. What is he, a trespasser? I mean, what if he's not an invitee? Well, I don't understand why that's the issue. That's the issue, Your Honor, because that was the issue confronted by the court in the first instance, Your Honor, as Your Honor knows. No, I understand that they're the invitor, but you said we don't know whether he's an invitee. What is he if he's not an invitee? Certainly, Mr. Knox was an invitee. So, to draw the analogy to Grogan and this court's other cases on point, Mr. Knox, the personal injury victim, was certainly the invitee. We look to Grogan to determine who was the invitor of that invitee owing duties to Mr. Knox, the invitee. So, that's the analogy. Right, but I'm asking, why is there an issue on the invitee here? Because REC claims invitee status. It claims that... Why isn't REC an invitee? That's my question. What is REC if REC is not an invitee? And why is REC not an invitee? REC is a subcontractor. Yeah, but that's... REC is not, to address it from another angle, Your Honor, REC is not an invitee. And REC concedes that a subcontractor is not covered under this MSA. Correct. And that's why they're pushing this invitee argument. Correct, Your Honor. And as Judge Zaney correctly noted, that is a, quote, awkward, close quote, position to maintain that would have, quote, gargantuan, close quote, ramifications because it would mean that Dawn, through the BISO contract, would be obliged to defend and indemnify not only the BISO family, as Judge Zaney aptly puts it, but also all contractors and all their subcontractors who happen to go work on this field, which incidentally would deprive the contracting parties of the ability to differentiate between the two. If the term invitees encompasses contractors and subcontractors who go to work at the project in these waters, then that, it would become difficult or perhaps impossible, certainly a case like this, to decide that by contract you're going to protect the BISO family, invitees in that sense, but not contractors and subcontractors, because regardless of whether you include the terms contractors and subcontractors in your indemnity clause, they are included because they are necessarily invitees. That is — That argument's been rejected by other courts specifically, that unless you specifically say it's not going to be, you can be — Your Honor, I would agree — I'm not suggesting, Your Honor, that it's impossible to be both. I agree it is certainly possible. It sounded like you were arguing that it was crazy to be both. Well, in this context, I think it doesn't make sense. In this context of an operation such as this, it would deprive the contracting parties of the ability to draw that differentiation. I'm not suggesting in all cases that there could not be coextensive inclusion as invitee and contractor. But you could be both, unless you say — You certainly can. You can be both. And you could have made a contract that said you can't. And you could have made a contract that said you can't. And there could have — it could have said explicitly that you can't be in the contract. And that's been confronted in the cases, too. It could have. This case, this contract did not define invitee. I believe the term has a recognized meaning. And, Judge Elrod, to address your concern another way, if I may, REC is not an invitee because in order for it to be an invitee, the court must conclude that the Gulf of Mexico was premises controlled by BISA. That is a holding that this court has never made, nor any other appellate court in the land. The only support for that proposition — You've been subsumed. I mean, you've made the argument much more clearly than ever before. But there's always been the thought that when the transfer is coming over the ocean, that you're in charge. That's kind of just been a — it's never been argued this way. It's just been thought that they control the operation. And people thought of the operation as the premises rather than the ocean itself. That's a great point. And let me address it, if I may. This is part of why, in our brief, we talk about cases that allow some extension, say, from the hotel to four feet away on the walkway. Because the operations underway here was a pipeline operation. This is all undisputed, which entailed workers on the seafloor working on pipelines. And then, of course, there were activities on the BISA Pipeline Barge. What REC is doing here is it's conflating this to draw in all the waters above the seafloor. We have no idea whether it was directly above the pipes being worked on or not. There's no evidence of that. And artfully talking about the personnel basket transfer from the BISA Barge to the REC vessel, leading to an injury on the deck of REC's vessel, and then describe — but yet wrapping in as the premises the surrounding waters of the Gulf of Mexico. This accident happened. This injury occurred on the deck of the REC vessel at the conclusion of this personnel basket transfer when Mr. Knox was on the basket coming from the BISA Barge. That's drug Grogan also actually happened on the deck. It is, Your Honor, but here's an important distinction we haven't yet discussed. In Grogan, what were the premises? The premises were the vessel. It was the vessel, the Triton Achiever. REC is not arguing that the premises here was its vessel, the Miss Jane, because that would lead to the absurd proposition that REC was the invitee on its own vessel. REC doesn't make that argument. REC argues that the Gulf of Mexico was the premises, but that's not where the accident occurred. The accident occurred on the deck of REC's vessel. So under Grogan and this Court's other authority, we would ask the question, who is the invitee, who is the invitor? The invitee under this Court's ruling in Grogan and the other relevant authorities was Mr. Knox, the personal injury victim, always the case. So then we get to the question, who's the invitor? That's the thornier question, and as this Court instructed in Grogan, we have to ask the question, who had control? Yes, this was REC's vessel, but by virtue of this contracted for work, did BISO obtain sufficient control in order to be regarded as the occupant of the Miss Jane? If so, then what that means is that BISO becomes the invitor. But nothing in Grogan, nothing in this Court's other authorities stand remotely for the proposition that REC becomes an invitee, and it seems a bit silly to suggest that REC is an invitee on its own vessel. The only authority for that, which also requires determination, that the Gulf of Mexico was the premises, which means that BISO has to control the Gulf of Mexico and make sure it's safe for REC. That is a fairly radical notion that has no grounding in any case ever decided by this Court. Why does it have to do, I understand that that's a radical notion, but why isn't what really it has to control its operations to make sure that when the, if you have a premises that's rickety, you have to make sure that you do your operations only in the times when the premises is least rickety. If you have a premises that's dark some of the time, you have to do it only in the light time, and you have a, so it's not that you're controlling the, whether the premises is light or dark, but you're controlling the operations that take place on the premises. Correct, Your Honor. If I understand you correctly, implicit in Your Honor's point is that the premises, in order for premises to be rickety, I assume you aren't describing the Gulf of Mexico's waters. I assume you're describing some real property on the Gulf, or a hotel, or whatever. The waters may be unpredictable, may be predictable, but extreme sometimes, predictably extreme. So they're not really, they're controlling their operations in the zone when the water's the most calm. They're only doing things when it's calm, because they know that sometimes it's not. For that one, Your Honor, all I can say is that I'm not aware of any authority, and we've certainly looked for the proposition that because of an invitor-invitee relationship, an oilfield contracting company has an obligation as invitor to ensure safe waters for the benefit of contractors or subcontractors. Now there could be some argument made, but not on the basis of invitee status. They're ensuring that operations only take place when the waters are safe, or the safest they can be. I would respectfully suggest, Your Honor, that that is a bit different from the obligation an invitee has, which is to keep the premises safe. And that would entail keeping the Gulf of Mexico safe, which I think harkens back to Judge Barksdale's question, what if a rogue wavefloat comes through? Is that an obligation of BISO, because BISO was the occupier of the premises responsible to maintain safe premises? That is getting far afield from any case law this Court has ever handed down, and it would have very, it would have, it's difficult to contemplate the ramifications that might flow from such a decision. Are you having this novel discussion because they're making a novel claim, or because you've thought of a novel defense? Well, Your Honor, my defense is only novel because the claim is novel. That's what I'm, it's because it's novel. Isn't their claim, their, their, their only, I'm trying to think of a, of a seafaring term, I'll just say hook. The only hook they hang their hat on is that the premises were controlled by BISO, meaning BISO, that's the only argument they're making, that these premises belonged to BISO. Correct. Not that BISO was negligent the way it operated its crane. Correct. The premises belonged to BISO. Correct. Just like the hotel belongs to the Hyatt. Correct. And, and the premises, including the waters of the Gulf of Mexico. We have At least a certain area around At least a certain area Around the Some ill-defined, undefinable area. Around the mighty chief. Correct. And the reason, Your Honor, is that we quoted and cited in our, in our brief cases addressing, you know, there is no penumbra beyond the area of control. And that is why we cited the cases that we did in our, in our brief for that proposition. Because here it's clear, it's undisputed, that where was the work occurring? It was on vessels. And where did the accident occur? On a vessel, on the deck of the Miss Jane. But none of those places are the place that REC asked this Court to define as the premises. It instead asked this Court to define as the premises the surrounding waters of the Gulf of Mexico, to some extent. Because REC does not argue that it was the invitee on his own vessel. And so, Your Honors, we think that it is a radical notion that REC brings to the Court today. It's hard to contemplate what could spin from such a determination. But suffice it to say, it is contrary to an established body of invitee, invitor law. And this law has been around for a very long time, premised on the notion of control of the premises. And that is something that there's no evidence in the REC to establish that BISO had control of the waters, in the sense of some ability to protect from risks inherent in the waters. Is there anything in the summary judgment record at this point as to how the accident occurred, how this Mr. Knox was ejected from the personnel basket? I believe there is, Your Honor. There is in Judge Zani's opinion. Judge Zani's opinion describes how, as the personnel basket transfer was being completed, the crane from the BISO barge allowed, or in some fashion, the transfer, the personnel basket slammed onto the deck of Ms. Jane. Right. And that was the moment when Mr. Knox came. But my question goes beyond that. Is there anything in the summary judgment record as to why it slammed onto the deck? Was the vessel coming up, or did it just drop him too quickly? Is there anything in the record? No, Your Honor, there's not. Do we need to overrule Clayton Williams? Yes, Your Honor. That would be appropriate. Do we actually need to overrule these opinions that don't discuss the issue, but assume that it is? Your Honor, my hope is that if we are to prevail, and if the Court were to affirm Judge Zani's opinion, I believe that would be the result, because this Court would then be on record as establishing what is required for premises. Certainly, at least at the Gulf of Mexico, or some portion thereof, cannot be premises under the control of a contracting party. Now, we already have opinions in the Larry Dwaron, but I guess there's language in the district court that's not specifically addressed in the... So, I mean, we'd have to talk about that language and the Clayton Williams case. What else would we have to talk about that's gone? Your Honor, to me, those are the two that are on point. Larry Dwaron, as the Court is certainly aware, was reversed by an en banc decision of this Court recently. Of course, the argument was never on this point. But not on that point. Yeah, not on this point. This point was relegated to one footnote, and as Judge Zani notes, there was no factual development, no real argument on this point, and it was dicta in the words of Judge Zani, relegated to footnote 16, I believe it is, in a very lengthy opinion. So it was certainly not discussed at length. With respect to the Clayton Williams case, Your Honor, again, the treatment was given fairly short shrift. There's no discussion of occupancy, what it means to be an occupier, no discussion of the control element whatsoever, which is absolutely integral to the idea of invitee status and the imposition of a duty on the part of the invitor to protect the invitee against the hazards of the premises. And we don't have to reach the dual invitee issue? Correct, Your Honor. Maybe the burning question here is, if you're going to dance, do you have to pay the fiddler? I wish I understood the ramifications of that well enough to address it, Your Honor. In order to try, I would say that, although it's certainly true that an invitee, that a contractor or subcontractor can be an invitee, I do believe that Judge Zani was correct when he noted here that it's awkward in the context of this case to draw that conclusion. And in the context of this case, it does present a gargantuan undertaking to Don that there really is no evidence. There was an intent for it to have to assume. And, Your Honor, really, to us, the main point is no prior opinion of this Court or any other appellate court has decided that the waters of the Gulf of Mexico or any other body of water are premises under the control of a contracting party, so it's straight invitee status. And just as importantly, under this Court's precedence, to the extent they are analogous and apply, all they do is lead to the conclusion that perhaps FISO could be regarded as the invitee by virtue of occupying through sufficient control the wreck vessel Miss Jane. None stand for the proposition that wreck would become an invitee. That has always been the status of the personal injury victim bringing the claim. This is an odd question to end an argument with, but do you agree that we have jurisdiction of this appeal under Thibodeau? I do, Your Honor. I'm finished. I would be happy to address any other questions the Court may have. Thank you, Your Honors. Thank you, Your Honors. I'd like to respond to a couple of the points raised. First, I'd like to point out that the en banc decision in In re Larry go on encouraged the courts to make indemnity clearer. In this case, there's been a long-standing body of contractual maritime law that clearly gives indemnity a broad scope, and that body of law was in existence when this contract was executed. It started with blanks, and the Reyno decision was there, and in the same year this contract was signed, Judge Afric decided the Clayton Williams case. All three of those decisions give a very broad scope to the word invitee, and therefore, the parties to this contract were well defining that term. As that body of law developed through the late 2000s to Grogan in 2016, the courts continued to give broad scopes of defining invitee and defining the premises to include the worksite. We are not asking this Court to say that the Gulf of Mexico is the premises for this accident. That's not the facts of this case, and it's not the facts we put in the case. Ms. Jane was right alongside working with the Mighty Chief to transfer an injured personnel. Clearly, that area of water is within the scope of the worksite and within the area that BISO controlled through its crane and crane operator. What was the distance between the Mighty Chief and Ms. Jane? We don't factually... Is it in the summary judgment record? It is not in the summary judgment record, but Your Honor, what I would argue is that whatever the distance of the crane boom is to access a vessel is within the scope of the worksite, because naturally... You make that argument in your brief? I believe we did make that argument in our brief in the lower court, Your Honor. No, I'm asking about this court. I don't recall that in your brief. I think we just argued that it was within BISO's control, and that control was inferred by BISO's work around the divers under the vessel, the pipeline coming from the vessel, and the act of offloading personnel onto the basket. Again, if there's issues of fact on that, that would have been a reason for the district court to deny both motions for summary judgment and ask the parties to develop the record further and come back, but we don't believe that that... Putting the district court in a pretty tough position. It's having to come up with issues and then have you brief them instead of you filing for summary judgment or defending against summary judgment and providing the evidence you think is necessary and stating the issues, and the district court rules. It doesn't go out looking for issues. No, Your Honor. I'm not asking the district court to look for issues. We believe the facts were sufficient to establish that in the Eugene Island 187 field, BISO controlled those activities, and in this particular time, controlled the operation in question by moving the personnel basket over. That's not the question. It's not what did it control. It's what was the premises it had to control. And Grogan says that the premises are what the occupant occupies by control, so I believe they are one in the same, Your Honor. You cannot have... You cannot occupy an area. I cannot occupy this space without controlling the space in some way, and that is what Grogan says. I may not own this space. You may be able to remove me from this space, but while I am here working in this space, I exert control over it, and that is all the Grogan court asked for premises because it is a broad definition. It allows the indemnity to have a broad scope as it is allowed in the general maritime law, and that is consistent with the way the case law is developed. Define the premises, and that's where it gets slippery. Again, Your Honor, I think it's not slippery if you just look at control, and the facts of this accident are not the whole Gulf of Mexico. That BISO is actually factually controlling at the time of the accident, which is why we believe we were an invitee at the time and entitled to indemnity. I would, again, end in the few seconds I have left. Let me ask you, if I'm standing out in the middle of the street and I tell a friend of mine to, hey, come on over. Let's walk across the street. If my friend is hit by a car, is that my premises and I'm liable? I think an important point I wanted to make at the end, Your Honor, is that Darwin cautions the courts and parties to not conflagrate and mix up tort law with contract law. Tort law is duties owed, and I see Your Honor going in that direction, and I think it's a natural direction to go in, but the courts caution to not do that if you don't have to. In this case, you don't have to look to the duties, one, because the duty is same under the General Maritime Law. It is the duty of reasonable care, and that's the only duty that exists under General Maritime Law, and two, because this Court and the lower courts applying General Maritime Contract Law have defined premises to include the work site. So if it was a big wave coming up, unknown, that was not predicted, it wasn't like the hurricane had been forecast, then it would be under tort, it would be reasonable care, and that would have been reasonable to let the basket transfer go, and it's just a terrible tragedy, but not... Precisely, Your Honor. I think when you look at the wave questions that we've been asked, those are tort questions, and the control in those tort questions are going to be reasonable care. I'm asking the Court to just look at premises from a contractual standpoint. I have two questions related to that. What do you say to the argument that that makes you the invite, not you, but your client the invitee on their own vessel? We thought of that same issue, Your Honor, and we don't think you have to, it gives you, it makes your brain sweat when you think about it. How do you get to be... The area that we've always argued that we were invited into is the work site, where the pipeline work was going on, and we were there, so there is no ambiguity or unclarity there. We don't have to get to whether or not our vessel was the premises, and therefore we're invited onto our premises. Our vessel came onto the premises where BESO was working. What is in the summary judgment record as to how it is that the Miss Jane came alongside the mighty chief? Do we have any transcript of radio communications or anything about we can't get a helicopter on this deck, so we need you to come alongside? Is there anything in the summary judgment record? There is, Your Honor, there are all the work records, and the work records both from the vessel logs and BESO detail the work that the Miss Jane is doing on many days. No, sir, my question is, for this specific operation, is there anything in the summary judgment record saying, say a radio communication or something from the mighty chief to the Miss Jane saying we can't get a helicopter here, you need to come alongside? Not the helicopter point, but the fact that the mighty Jane, I'm sorry, the Miss Chief came alongside the BESO to offload personnel to be taken to another platform on a dock is very clearly spelled out in BESO's work records. At the time of this incident? At the time of this incident. And it was alongside the mighty chief to fulfill its contract to offload crew members or supplies? Yes, Your Honor, the Miss Jane was requested to come alongside the mighty chief to take Mr. Knox so that he could be evacuated to a platform. That's my question, what in the summary judgment record says that, that the Miss Jane was invited to come alongside to take Mr. Knox? The BESO work records and the Miss Jane. And what does that say? The BESO work records say that the Miss Jane was there to take personnel to another platform. We know later that a helicopter had to be used, but that isn't, that's remote from this incident, but this, all of the work records indicate that the time of this incident, the Miss Jane was brought to the BESO mighty chief at the request of the mighty chief to evacuate Mr. Knox. Do you believe that if we were to rule against you, that that would necessitate overruling Clayton Williams? I hesitate to go that far, Your Honor, because I think there's an intermediary step. What is that step? Where the court could just remand this for more factual development, which is our alternative argument. And I think that would be the more appropriate course of action than overruling those bodies of cases that are based on their own facts in place. I think this case is unique in that we did try to bring this issue up quickly because we thought it was well-developed and in place, and that the body of law was very clear that that fell into the term of invitee and this was the premises. If the court disagrees with that, then I think the appropriate thing would be to remand for further factual development. Thank you, Your Honor. Thank you, sir. That concludes the cases we have for our argument today. This panel will recess until 9 o'clock.